PAUL S. PADDA, ESQ.
Nevada Bar No. 10417
*Email: psp@paulpaddalaw.com*
RAVI CHANDERRAJ, ESQ.
Nevada Bar No. 17053
*Email: rchanderraj@paulpaddalaw.com*
**PAUL PADDA LAW, PLLC**
4560 S. Decatur Boulevard, Ste. 300
Las Vegas, Nevada 89103
Phone: (702) 366-1888
Facsimile: (702) 366-1940
Attorney for Plaintiff

**PAUL PADDA LAW, PLLC**
**4560 South Decatur Boulevard, Suite 300**
**Las Vegas, Nevada 89103**
**Tele: (702) 366-1888 • Fax (702) 366-1940**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JASLYN COSEY (an individual),<br><br>Plaintiff,<br><br>vs.<br><br>RUSSELL ROAD TIC I LLC d/b/a GLO LAS VEGAS (a foreign limited liability company); TIC MANAGER LLC (a foreign limited liability company); GREP SOUTHWEST, LLC, DBA GREYSTAR (a foreign limited liability company); and DOES I through XX, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-02069-JAD-EJY<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

COMES NOW, Plaintiff Jaslyn Cosey ("Plaintiff"), by and through her counsel of record, Paul S. Padda, Esq., of Paul Padda Law, and brings this action pursuant to Nevada's Deceptive Trade Practices Act ("NDTPA"), N.R.S. §§ 598.0903 through 598.0999, and related claims for damages.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

## I.

## PRELIMINARY STATEMENT

1. This is a class action brought pursuant to Nevada's Deceptive Trade Practices and Consumer Fraud statutes. Plaintiff seeks damages and equitable relief against Defendants RUSSELL ROAD TIC I LLC; TIC MANAGER LLC; AND GREP SOUTHWEST, LLC, DBA GREYSTAR; on behalf of herself and all those similarly situated, for Defendants' predatory collection of attorney's fees from tenants who have fallen behind on their rent.

2. While the Defendants are entitled to collect past due rents and contractually specified late fees, they are not entitled to extract legal fees from tenants without a court order, nor are they entitled to overcharge tenants for "junk" fees that are not specified in their leases.

3. However, the Defendants are doing exactly that. By routinely charging illegal fees to low income and fixed income tenants, many of whom are disabled, the Defendants create a vicious cycle that causes such tenants to fall further and further behind on their rent, often resulting in eviction.

4. Plaintiff's case is instructive. She was a tenant at Glo Las Vegas, an apartment complex in Las Vegas, Nevada owned and operated by Defendants, from September 2023 until August 7, 2025. Plaintiff is disabled and receives a fixed income in the form of long-term disability payments. These payments arrive mid-month, but Plaintiff's rent at Glo Las Vegas was due at the beginning of each month. Instead of accommodating Plaintiff's rent payment schedule, the Defendants penalized her by charging her "legal fees" and other junk fees each time she paid her rent. This caused Plaintiff to fall significantly behind on her rental payments.

5. Because Plaintiff was committed to paying back the rent that she owed, she applied for and received rental assistance through a program set up by the government of Clark County, Nevada. However, the Defendants misappropriated Plaintiff's rental assistance funds by applying them to pay down the accumulated junk fees that they had illegally charged her over the course of several months.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

6. The Defendants also frustrated Plaintiff's ability to repay her rent by obfuscating the amount she truly owed, refusing to accept her payments to the extent they did not include junk fees, and misrepresenting the actual landlord of Glo Las Vegas.

7. When Plaintiff complained about these practices, the Defendants brazenly admitted to Plaintiff that it is a standard practice for them to collect these junk fees from tenants who have fallen behind on their rent. In fact, certain employees of the Greystar Defendants dared Plaintiff to challenge them in court.

8. Greystar has been sued by plaintiffs around the country for its unscrupulous practices, including charging hidden fees. However, none of these lawsuits directly challenge whether the Defendants' deceptive practice of charging attorney's fees and junk fees to Nevada tenants who are behind on their rent violates Nevada law.

9. Plaintiff therefore brings this lawsuit to remedy the Defendants' outrageous, deceptive, and fraudulent conduct against her and all similarly situated tenants of Greystar properties.

## II.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because (i) there is diversity of citizenship between the named Plaintiff and Defendants, (ii) there are at least 100 members in the putative class, and (iii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over the Greystar Defendants because they do business in Nevada and/or have the requisite minimum contacts with Nevada necessary to constitutionally permit the Court to exercise jurisdiction with such jurisdiction also within the contemplation of the Nevada "long arm" statute, NRS § 14.065. More specifically, and set forth in greater detail, *infra*, the Greystar Defendants enriched themselves by owning and managing apartment units in Nevada (including through entities that are not licensed to do business in

Nevada), making those units available to rent to Nevada residents, and collecting illegal fees from their Nevada tenants who fall behind on their rents.

12. The acts set forth herein occurred in Clark County, Nevada.

13. Plaintiff's causes of action arose in Clark County, Nevada.

14. Venue is proper in this Court because Defendants' conduct alleged herein took place in Clark County, Nevada.

**III.**

**PARTIES**

15. Plaintiff was a resident of Clark County, Nevada from 2022 through August 7, 2025. She was a tenant at Glo Las Vegas from September 2023 until July 2025.

16. Defendant Russell Road TIC I LLC ("Russell Road TIC I") is a Delaware limited liability company with headquarters in Los Angeles, California. Russell Road TIC I is licensed to do business in Nevada. On information and belief, Russell Road TIC I is the majority owner and landlord of Glo Las Vegas and a Greystar corporate affiliate.

17. Defendant TIC Manager LLC ("TIC Manager") is a Delaware LLC with headquarters in Los Angeles, California. On information and TIC Manager serves as the LLC manager for Russell Road TIC I. On information and belief, TIC Manager is not licensed to do business in Nevada. On information and belief, TIC Manager is a Greystar corporate affiliate. In Plaintiff's leases with Glo Las Vegas, TIC Manager was incorrectly listed as Plaintiff's landlord.

18. Defendant GREP Southwest, LLC, dba Greystar ("GREP SW," and together with Russell Road TIC I and TIC Manager, the "Greystar Defendants" or "Greystar") is a Delaware LLC with headquarters in Charleston, South Carolina. On information and belief, GREP SW contracts directly with property owners in Nevada to provide property management services. As part of its management responsibilities, and at all times material to this Complaint, GREP SW has advertised, marketed, promoted, offered, leased, and managed the rental of apartment and residential units to consumers in Nevada. Defendants have confirmed that GREP SW is the Greystar entity responsible for the on-site management of Glo Las Vegas. *See* ECF No. 11 at 5,

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

line 21. Moreover, Greystar's corporate website discloses that GREP SW is the Greystar entity associated with Greystar's Nevada properties. See https://www.greystar.com/disclosures-and-licenses.

19. The Greystar Defendants have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below. The Greystar Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, and office locations, and unified advertising and internal operating policies and procedures. Because the Greystar Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

20. The identities of the Defendants, Does I through XX, are unknown at this time and may be individuals, partnerships, or corporations. On information and belief, Does I through XX facilitate Greystar's unlawful practices described in this complaint. Plaintiff will request leave of Court to amend her Complaint to name the Defendants specifically when their identities become known.

## IV.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### *Greystar's Property Management Services*

21. Through their parents and affiliates, the Greystar Defendants brand themselves as "The Global Leader in Rental Housing" and tout that they are the "largest operator of apartments in the United States." As of January 1, 2024, the Greystar Defendants' interrelated network of companies managed more than 800,000 rental units nationwide (including apartments and beds in student housing properties). On information and belief, the Greystar Defendants manage at least 43 rental communities in Las Vegas alone. *See* https://www.greystar.com/homes-to-rent/us/nv/las-vegas-valley. Greystar operates multi-family residential rental buildings and complexes, as well as active adult and student communities.

22. Greystar provides property management services for Greystar-owned rental properties and for properties owned by other landlords.

23. Greystar enters into property management agreements ("PMAs") with the owners of all Greystar managed properties. For Greystar-owned properties, the Greystar Defendants enter into PMAs with the relevant Greystar subsidiary or holding company that holds title to the property. The PMAs lay out Greystar's duties to the property owners, including Greystar's responsibility for leasing, marketing, tenant relations, and day-to-day operations at the subject property.

24. Greystar's PMAs with Greystar-owned properties do not vary significantly from its PMAs with properties owned by third parties.

25. When Greystar serves as property manager for a rental property, the PMA generally provides that Greystar will be responsible for:

a. advertising available rental units;

b. ensuring the information displayed on property websites is accurate;

c. communicating with current and prospective tenants;

d. leasing rental units to qualified tenants;

e. billing tenants and collecting payments;

f. marketing properties and maintaining property websites;

g. hiring and training all on-site personnel at the property;

h. entering into contracts with third-party service providers as the property owner's agent;

i. maintaining apartment units and property premises in a habitable condition;

j. developing an annual budget for each property and submitting quarterly or annual reports to property owners; and

k. ensuring the collection of tenants' monthly payments.

26. Greystar also offers post-tenancy services to pursue debts owed by former tenants.

27. As property manager, Greystar is responsible for all tenant relations.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

28. In the case of Glo Las Vegas, Defendant GREP SW provided all of the management services listed above and served as the main point of contact for tenants residing in at the property, including Plaintiff.

29. On information and belief, all of the Greystar employees that Plaintiff interacted with during her tenancy at Glo Las Vegas were employed by Defendant GREP SW.

30. In exchange for its property management services, the property owner generally pays Greystar the greater of a flat fee or a percentage of the property's gross rental revenue. Depending on the specific agreement between Greystar and the property owner, the calculation of the gross rental revenue may include all nonrefundable amounts collected from tenants, including any attorney's fees and excess utilities fees charged to tenants.

***Plaintiff's Application to Glo Las Vegas***

31. Plaintiff sustained a back injury in 2017, after which she developed a degenerative disc disease. Over time, Plaintiff's condition worsened, making it difficult for Plaintiff to earn regular income.

32. Plaintiff's disability eventually progressed to the point that she became unable to work. As a result, in April 2024, Plaintiff began receiving short term disability benefits.

33. In August 2023, Plaintiff applied to become a tenant of Glo Las Vegas. The cost of her application amounted to $305.

34. Plaintiff was attracted to the property because the advertised price was competitive for the area and fit into her budget, which was fixed at the amount of her disability payments.

35. At the time she applied to become a tenant at Glo Las Vegas, the advertised rent for Plaintiff's unit was $1,598, exclusive of fees.

36. During her review of the property in August 2023, Plaintiff corresponded with Leslie Perez, at the time the Community Property Manager of Glo Las Vegas and a Greystar employee. Plaintiff also interacted with Jimmitrice Winters, a leasing consultant at Glo Las Vegas and a Greystar employee.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

37. Before Plaintiff applied to become a tenant of Glo Las Vegas, neither Ms. Perez nor Mr. Winters informed Plaintiff that she would be charged attorneys' fees in the event of any late rent payments. Ms. Perez and Ms. Winters also failed to inform Plaintiff that Greystar would not make any accommodations to Plaintiff's rent payment schedule to account for the timing of her disability payments.

38. Ms. Perez and Mr. Winters also failed to specify how much Plaintiff would owe in additional fees for water, sewer, and trash payments each month, over and above the amounts specified in her lease, or how those amounts would be calculated.

39. After Plaintiff paid the $305 application fee and was approved as a tenant, Plaintiff was presented with a lease to sign.

40. It was only after Plaintiff reviewed the lease that she was able to review the amount of fees charged by the Greystar Defendants beyond the advertised rental price of $1598.

41. Neither Ms. Perez nor Mr. Winters, nor any other Greystar employee, took the time to explain the fees that Plaintiff would be required to pay during the lease signing process.

42. For example, before Plaintiff signed her lease in August 2023, Ms. Perez and Mr. Winters failed to inform Plaintiff that her lease purported to require her to pay a $75 "Lease Violation Notice" fee each time that her rent was paid late, pursuant to the following provision:

> SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) LEASE VIOLATION NOTICE: In the event that the Landlord is required to serve Resident(s) notice of any lease violation notice; Resident shall be liable for payment of $75.00 Notice Fee per occurrence. Pursuant to this provision, Resident shall remit payment of a non-refundable cleaning fee in the sum of $150.00. The parties agree that the non-refundable cleaning fee is not a deposit and stipulate that the fee paid pursuant to this provision is intended to cover basic cleaning upon the turning of the leased premises. The payment of this fee does not absolve Resident from the obligations under the lease to return the leased premises in a clean and damage free condition. The non-refundable fee does not cover nor will it offset any charges for carpet cleaning, repair or replacement or any other damages sustained to the leased premises that require repair. Any such charges will be deducted from any refundable deposit required by the terms of this lease, with any remaining balance being due and owing from Resident.

43. Plaintiff's rent ledger clearly demonstrates that this "Lease Violation Notice" fee was in fact an "Attorney or Legal" fee:

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2016 | 11/07/2023 | 112023 | | | ATTRNY | Attorney Or Legal Charges - Cosey | | 75.00 | 0.00 | | 1,922.70 |
| 2016 | 11/05/2023 | | | | LATEFEE | November late fees | | 79.90 | 0.00 | | 1,847.70 |

44. Plaintiff later received written confirmation from a Greystar employee that the "Lease Violation Notice" fee is, in fact, an illegal attorney's fee provision. For example, in a May 15, 2025 email sent to Plaintiff by Michael De La Cruz, a Greystar employee who had taken over as Community Property Manager of Glo Las Vegas, Mr. De La Cruz confirmed that the "Lease Violation Notice" fee "cover[s] a range of expenses beyond just court appearances. For example, the cost of serving a 30-day notice is considered part of these fees."

45. In addition to failing to disclose the illegal attorney's fee provision, during the lease signing process, Ms. Perez and Mr. Winters also failed to explain to Plaintiff the amount that she would be required to pay each month for water, sewer, and trash services. Plaintiff's lease provides that each service would be billed to plaintiff according to an inscrutable "formula," as follows:

1. Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.

a) **Water** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ water bills will be billed by the service provider to us and then allocated to you based on the following formula: 6
  - ☐ If flat rate is selected, the current flat rate is $ ________ per month.
  - ☒ 3rd party billing company if applicable Conservice

b) **Sewer** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ sewer bills will be billed by the service provider to us and then allocated to you based on the following formula: 6
  - ☐ If flat rate is selected, the current flat rate is $ ________ per month.
  - ☒ 3rd party billing company if applicable Conservice

c) **Gas** service to your dwelling will be paid by you either:
- ☒ directly to the utility service provider; or
- ☐ gas bills will be billed by the service provider to us and then allocated to you based on the following formula: ________
  - ☐ If flat rate is selected, the current flat rate is $ ________ per month.
  - ☐ 3rd party billing company if applicable ________

d) **Trash** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ trash bills will be billed by the service provider to us and then allocated to you based on the following formula: 10
  - ☐ If flat rate is selected, the current flat rate is $ ________ per month.
  - ☒ 3rd party billing company if applicable Conservice

46. Plaintiff's August 2023 move-in statement similarly omits information about the amount Plaintiff would be charged for utilities:

**GLO (Venue, The)**
5035 E Russell Rd
Las Vegas , NV 89122-8037
(702) 431-5358
Fax (702) 431-5307
www.glolasvegas.com
glolasvegasnv@greystar.com

**Move-in statement**
**Jaslyn Cosey**
Move-in **09/01/2023**

**Lease information**

| | |
|---|---|
| Move in | **09/01/2023** |
| Begin | **09/01/2023** |
| End | **09/30/2024** |
| Leasing consultant | **Jimmitrice Winters** |

**Resident information**

| | |
|---|---|
| Name | **Jaslyn Cosey** |
| Phone | **(310) 462-8099** |
| Email | **jstarr257@gmail.com** |

**Unit information**

| | |
|---|---|
| Unit | **2016** |
| Floor level | **0** |
| Floor plan | **2x2BR1 T3-2 Bedroom, 2 Bath** |
| Bedrooms / bathrooms | **2/2** |
| Square feet | **1122** |
| Address | **5035 E. Russell Rd. #2016 Las Vegas , NV 89122** |

**Due at move-in**

| | |
|---|---|
| Total deposit | 400.00 |
| One time fees | |
| Move-In Cleaning Charges | 150.00 |
| Scheduled billing prorate | |
| Rent, unit 2016 | 1,598.00 |
| Total | 2,148.00 |

**Scheduled billing**

| | |
|---|---|
| Rent, unit 2016 | 1,598.00 |
| Total | 1,598.00 |

**Does not include utility billing.*

**Specials**

Selected special

**Payments made**

| | | |
|---|---|---|
| 08/18/2023 | Jaslyn Cosey Online Payment Fee 8/19/2023 | payment305.00 |
| Total | | 305.00 |

**Payment schedule /**

| | | | |
|---|---|---|---|
| Sep 2023 1748.00 | Jan 2024 1598.00 | May 2024 1598.00 | Sep 2024 1598.00 |
| Oct 2023 1598.00 | Feb 2024 1598.00 | Jun 2024 1598.00 | |
| Nov 2023 1598.00 | Mar 2024 1598.00 | Jul 2024 1598.00 | |
| Dec 2023 1598.00 | Apr 2024 1598.00 | Aug 2024 1598.00 | |

47. Plaintiff was excited at the prospect of becoming a tenant of Glo Las Vegas, so she signed the lease on August 20, 2023 notwithstanding Greystar's failure to clearly disclose these fees prior to her application, or to explain them during the lease signing process.

48. Even if Plaintiff had attempted to negotiate these fees downward, she would not have been able to reduce the amount of fees, as the fees that Greystar charges for tenants at Glo Las Vegas are non-negotiable.

***Plaintiff's Tenancy at Glo Las Vegas***

49. Almost immediately after Plaintiff became a tenant of Glo Las Vegas, things went sideways.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

50. In or about October 2024, Plaintiff transitioned from receiving short term disability payments to long-term disability payments after her degenerative disk condition was diagnosed as a chronic disability. Plaintiff was also diagnosed with high blood pressure and anxiety after being hospitalized for these conditions.

51. In the midst of her transition from short term to long term disability, there were several months in 2023 and 2024 when Plaintiff's receipt of disability payments was delayed. Plaintiff therefore became unable to consistently make her rent payments to Glo Las Vegas on the first of each month.

52. Moreover, Plaintiff's long term disability payment schedule specified that she was to receive payments in the middle of the month, while her rent at Glo Las Vegas was due on the first day of each month.

53. In or around November 2024, Plaintiff raised these issues with Lamiricle Cleveland, then the Assistant Manager of Glo Las Vegas and a Greystar employee, but Greystar refused to make any accommodations to Plaintiff's rent payment schedule. Greystar insisted that Plaintiff pay her rent on the first of each month regardless of any delay in her receipt of fixed income disability payments.

54. Greystar deemed each rent payment that Plaintiff made after the first of the month as a late payment, notwithstanding its knowledge of Plaintiff's disability and her income schedule.

55. For each such late payment, Greystar charged Plaintiff at least $75 in "Attorney or Legal Charges". In December 2024, Greystar charged Plaintiff $175 in attorney's fees.

56. The imposition of attorney's fees without a court order is expressly prohibited by Nevada law, even if a written lease authorizes the landlord to collect such fees. *See* N.R.S. 118A.220(1)(c).

57. Given Plaintiff's fixed income, the accumulation of these junk fees made it increasingly difficult for Plaintiff to pay down her balance with Glo Las Vegas.

58. Plaintiff's repayment difficulties were exacerbated by the fact that Greystar apparently overcharged her for water, trash and sewer fees for the duration of lease.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

59. As a representative example, in November 2023, Greystar charged Plaintiff $37.74 for water, $25.06 for trash service, and $11.14 for sewer service. Plaintiff was charged a similar amount for these services each month that she resided at Glo Las Vegas.

60. Nothing in Plaintiff's lease authorized Greystar to charge Plaintiff such high amounts for these basic services.

61. Moreover, Greystar frustrated Plaintiff's ability to pay her rent on time by refusing to accept any rent payments that did not include the full amount of junk fees.

62. When Plaintiff attempted to pay Greystar her contractually specified rent and utilities, less illegal attorney's fees and junk fees not specified in her lease, Greystar routinely refused to accept the payments, causing Plaintiff to scramble to find additional sources of income to pay Greystar funds to which they were not entitled.

63. For example, in a May 15, 2025 email, Mr. De La Cruz, the Glo Las Vegas Community Property Manager, informed Plaintiff that "only payment for [the] full amount" inclusive of legal fees and unreasonably high utilities fees, would be accepted.

64. Plaintiff's outstanding balance increased over time as Greystar continued to apply these unscrupulous fees to her account.

65. Despite her difficulties, Plaintiff was determined to repay the actual rent that she owed.

66. In December 2024, at the recommendation of the Greystar Defendants, Plaintiff applied to the Clark County Cares Housing Assistance Program ("CHAP"), an eviction prevention program run by the government of Clark County, Nevada.

67. Plaintiff was approved for CHAP assistance on December 20, 2024. The program confirmed that it would issue rental assistance funds totaling $10,727.84 to pay down Plaintiff's existing balance and cover her rent for January through March 2025, plus a flat rate of $50 per month to cover certain legitimate fees specified in Plaintiff's lease.

68. CHAP issued these rental assistance funds directly to Greystar.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

69. The Greystar Defendants misused Plaintiff's CHAP funds by applying them to pay down not just Plaintiff rent and legitimate fees, but also the accumulated balance of the attorney's fees and the excess utilities fees that Greystar had impermissibly charged Plaintiff over the duration of the lease.

70. After misusing Plaintiff's CHAP funds in this way, Greystar informed Plaintiff in March 2025 that the funds were insufficient to cover her March rent. Thus, Greystar charged Plaintiff a late fee and attorney's fees for March 2025 and issued a 30-day eviction notice to her.

71. When Plaintiff became aware of this, she sent an email to Michael De La Cruz, the Community Property Manager at Glo Las Vegas, on or around May 15, 2025, complaining about Greystar's misuse of her rental assistance funds. In response, Mr. De La Cruz confirmed that "your CHAP payment was applied to the balance due at the time it was received, including any associated legal fees."

72. Plaintiff then met with Mr. De La Cruz on or around May 17, 2025, in attempt to resolve the situation. During that meeting, Plaintiff again complained about the misuse of her CHAP funds to pay Greystar's attorney's fees. Plaintiff also complained about the issuance of an eviction notice based on her purportedly late March 2025 rent payment. Plaintiff explained to Mr. De La Cruz that CHAP had issued rental assistance funds to cover her rent through March 2025, and these funds should have covered her entire rent balance for that month.

73. Mr. De La Cruz told Plaintiff that her CHAP funds were insufficient to cover her March 2025 rent inclusive of utilities and legal fees, and that these fees would not be reduced.

74. As to Plaintiff's complaint about Greystar's use of CHAP funds to pay its own attorney's fees, Mr. De La Cruz told Plaintiff that he had worked at several Greystar properties and that it is Greystar's standard practice to charge tenants attorney's fees, without a court order, every time they are late with their rent payments. He dared Plaintiff to challenge this practice in court.

75. Following the May 17 meeting, Greystar continued to charge Plaintiff for attorney's fees each month, despite knowing that she receives a fixed income and receives her

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

disability payments in the middle of the month. Greystar also continued to bill Plaintiff excessive amounts for her utilities.

76. Thus, even after receiving CHAP assistance, Plaintiff had to scramble each month to scrape together sufficient funds to pay down her balance, which exceeded her fixed income payments because of the illicit attorney's fees and utilities charges Greystar continued to apply to her account.

77. Plaintiff suffered extreme anxiety and emotional distress because of Greystar's illicit practices, both of which were made worse because of Plaintiff's disabilities.

78. Greystar also made no effort to accommodate Plaintiff's disabilities and in fact exacerbated them by adopting an unnecessarily hostile attitude in dealing with her.

79. For example, during Plaintiff's May 17, 2025 meeting with Mr. De La Cruz, which had been rescheduled from May 15, 2025 at Plaintiff's request because she had been suffering from anxiety and back pain, Mr. De La Cruz berated Plaintiff for cancelling the original meeting and "wasting" his time.

80. In another instance that occurred in June 2025, Greystar declined to fix Plaintiff's malfunctioning thermostat despite Plaintiff's repeated complaints that it was leading to an exacerbation of her disabilities. In a June 17, 2025 email, Plaintiff informed Jamilah Hampton, the Assistant Property Manager of Glo Las Vegas and a Greystar employee, that her new thermostat was not turning on automatically, causing Plaintiff to have to stand up and sit down repeatedly during the day to adjust it, which was extremely difficult for Plaintiff due to her back injury. In a response sent later that day, Ms. Hampton informed Plaintiff that her old thermostat had already been replaced pursuant to a prior work order, and that the new thermostat was "currently operating within normal parameters." Ms. Hampton informed Plaintiff that the work order would be closed, and no one came to Plaintiff's apartment to inspect the thermostat despite Plaintiff's disabilities and the extreme summer temperatures.

81. Greystar also refused to disclose the actual landlord of Glo Las Vegas to Plaintiff, even though it was required to do so by statute.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

82. On multiple occasions in or around June and July 2025, Plaintiff requested information about the Glo Las Vegas owner so that she could raise her concerns about disability accommodations and legal fees directly with the owner, instead of dealing with the staff of Glo Las Vegas, none of whom made any effort to address Plaintiff's concerns.

83. For example, in response to Plaintiff's inquiries about the ownership of Glo Las Vegas, Hunter Prewitt, a Glo Las Vegas Community Manager and a Greystar employee, informed Plaintiff in a July 1, 2025 email that he "did not have contact information for the ownership group." He stated to Plaintiff that "[a]s Greystar is the management company, we are the owner's representative."

84. Similarly, in response to a July 18, 2025 email from Plaintiff reiterating her request for information about the ownership of Glo Las Vegas, a Greystar employee named Esther Barba, a Community Manager of Glo Las Vegas, informed Plaintiff that "[w]e are no[t] allowed to provide any contact information for ownership."

85. Plaintiff later discovered, on her own, that the landlord listed in her lease, TIC Manager, is not the actual landlord of Glo Las Vegas, and that TIC Manager is not licensed to do business in this state.

86. Plaintiff further discovered on her own that Russell Road TIC I is in fact the majority owner and landlord of Glo Las Vegas.

## V.
## <u>CLASS ALLEGATIONS</u>

87. This action is brought and may properly proceed as a class action pursuant to Nevada Rule of Civil Procedure 23 ("Rule 23"), including, without limitation, sections (c)(1)-(3) of Rule 23.

88. Plaintiff seeks certification of the following class (the "Class"):

> All persons who were charged mandatory legal fees by Greystar without a court order upon late payment of their rent.

> All persons who were charged by Greystar for water, trash and sewer services over and above the amounts specified in their lease.
>
> All disabled persons who were subjected to Greystar's deceptive trade practices described herein, including charging mandatory legal fees, misstating the true price for services, concealing the true landlord, using coercion and intimidation when dealing with disabled tenants' requests for accommodation, and operating without a business license.

89. Greystar's deceptive practice of charging legal fees and junk fees violated each Class member's individual statutory right to truthful information about the terms of their tenancies and the amounts that they were lawfully obligated to pay.

90. Greystar's deceptive practices have resulted in actual injury and harm to Class members in the amount of fees that they were charged in violation of Nevada law and/or the terms of their leases.

91. Plaintiff expressly reserves the right to amend, add to, modify, and/or otherwise change the proposed class definitions as discovery in this action progresses.

92. The following people are excluded from any of this Class: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) the Greystar Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which the Greystar Defendants or their parents have a controlling interest, and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and non-attorney employees of their firms; and (6) the legal representatives, successors, and assigns of any such excluded persons.

93. **Numerosity.** Plaintiff is informed and believes that there are tens of thousands of members of the Class. The Class is so large that the joinder of all of its members is impracticable. The exact numbers of the class can be determined from information in the possession and control of Greystar.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

94. **Commonality.** Greystar has acted or refused to act on grounds that apply generally to the Class. Absent certification of the Class, the relief sought herein creates the possibility of inconsistent judgments and/or obligations imposed on Greystar. Numerous common issues of fact and law exist, including, without limitation:

a. Whether Greystar's imposition of a $75 "lease violation" fee, which is characterized as a "attorney or legal charges" in Plaintiff's rent ledger, violates NRS 118A.220's prohibition on provisions that purport to charge tenants attorney's fees prior to the entry of a court order;

b. Whether Greystar's immediate imposition of a fee for late payment of utilities, despite lease provisions stating that tenants have 15 days to make utility payments, constitutes a deceptive trade practice;

c. Whether Greystar's imposition of "attorney or legal" fees and "damage waiver" fees on late-paying tenants constitute deceptive trade practices;

d. Whether Greystar's imposition of variable costs for trash, sewer, and water services on tenants of Glo Las Vegas, despite failing to specify the calculation of such fees in tenant leases, constitutes a deceptive trade practice in violation of NRS 598.0915(13) and (15) and NRS 598.0923(1)(b);

e. Whether Greystar's imposition of the aforementioned fees constitutes "fail[ure] to disclose a material fact in connection with the sale or lease of goods or services" in violation of NRS 598.0923(1)(b) or an "unconscionable practice" pursuant to NRS 598.0923(1)(e);

f. Whether Greystar's fee collection practices at Glo Las Vegas amount to consumer fraud pursuant to NRS 41;

g. Whether Greystar's fee collection practices violated any other provisions of the Nevada DTPA;

h. Whether Greystar is liable for unjust enrichment;

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

i. Whether Greystar makes standardized representations concerning the collectability of attorneys fees and other junk fees from late-paying tenants;

j. Whether Greystar charges standardized junk fees to consumers;

k. The dates of Greystar's practices and any purported changes to those practices.

95. **Predominance.** The common issues predominate over the individualized inquiries in this action because Greystar's liability can be established as to all members of the Class as discussed herein.

96. **Typicality.** Plaintiff's claims against Greystar and experience with Greystar are typical, if not identical, to the claims and experiences of members of the class because, among other reasons, Plaintiff's claims arise from Greystar's practices that are applicable to the entire Class.

97. **Adequacy.** Plaintiff will adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the other members of the Class, as Plaintiff and each member of the Class lost money by paying illegal fees to Greystar and/or suffered damage from Greystar's refusal to make accommodations for their disabilities. Plaintiff also has no interests antagonistic to those of the Class, and Greystar has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

98. **Superiority.** There are substantial benefits to proceeding as a class action that render proceeding as a class action superior to any alternatives, including that it will provide a realistic means for members of the Class to recover damages; the damages suffered by members of the Class may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Class may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to members of the Class can be effectively managed in a single proceeding. Plaintiff and her counsel

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

99. Plaintiff reserves the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

## VI.
## FIRST CAUSE OF ACTION

***(Deceptive Acts or Practices by Defendants in Violation of Nevada's Deceptive Trade Practices Act (N.R.S. §§ 598.0903 through 598.0999))***

100. Plaintiff repeats, re-alleges, and incorporates herein by reference paragraphs 1 through 93 above as if fully set forth herein.

101. As a disabled individual, Plaintiff is authorized to bring a civil action to remedy violations of the Deceptive Trade Practices Act. *See*, *e.g.*, NRS 598.0977.

102. At all times relevant herein, the Greystar Defendants violated the Nevada Deceptive Trade Practices Act by repeatedly and willfully committing deceptive acts or practices, in the conduct of commerce.

103. The Greystar Defendants willfully committed deceptive trade practices because of false representations as well as omissions of material facts. *See* NRS 598.0915(13) ("Makes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions"); NRS 598.0915(15) ("Knowingly makes any other false representation in a transaction"); NRS 598.092(8) ("Knowingly misrepresents the legal rights, obligations or remedies of a party to a transaction"); NRS 598.0923(1)(a) ("Conducts the business or occupation without all required state, county or city licenses"); NRS 598.0923(1)(b) ("Fails to disclose a material fact in connection with the sale or lease of goods or services"); NRS 598.0923(1)(c) ("Violates a state or federal statute or regulation relating to the sale or lease of goods or services"); NRS 598.0923(1)(d) ("Uses coercion, duress or intimidation in a transaction"); NRS 598.0923(1)(e) ("Uses an unconscionable practice in a transaction").

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

104. Defendants acted knowingly under Nevada law, which states that under the NDTPA, "'knowingly' means that the defendant is aware that the facts exist that constitute the act or omission." *Poole v. Nev. Auto Dealership Invs.*, LLC, 2019 Nev. App. LEXIS 4, *2. Similarly, "a 'knowing[ ]' act or omission under the NDTPA does not require that the defendant intend to deceive with the act or omission, or even know of the prohibition against the act or omission, but simply that the defendant is aware that the facts exist that constitute the act or omission." *Id.* at *8 (alteration original).

105. The Greystar Defendants knowingly misrepresented the legal rights of Plaintiff and the Class and knowingly violated a Nevada statute by charging Plaintiff and the Class attorney's fees for late payment without a court order, which is specifically disallowed under Nevada law. NRS 598.092(8).

106. The Greystar Defendants knowingly made false statements and failed to disclose material facts concerning the true price of renting a unit at Glo Las Vegas. NRS 598.0915(13), (15); NRS 598.0923(1)(b). In particular, during Plaintiff's lease signing process in August 2023, the Greystar Defendants misrepresented the price of water, trash, and sewer services for Plaintiff's rental unit at Glo Las Vegas.

107. The Greystar Defendants knowingly used intimidation and unconscionable practices by regularly charging attorney's fees illegally for the duration of Plaintiff's lease and then daring Plaintiff to challenge their illegal practice in court, and by failing to accommodate reasonable requests for accommodation of Plaintiff's disabilities. NRS 598.0923(1)(d)-(e).

108. The Greystar Defendants knowingly misrepresented the actual landlord of Glo Las Vegas and conducted business in Nevada through Defendant TIC Manager, an entity that does not possess all required state and county licenses to operate as a landlord. NRS 598.0915(15); NRS 598.0923(1)(a).

109. The Greystar Defendants' deceptive representations, concealments, and omissions were knowingly made in connection with trade or commerce, were reasonably calculated to

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

deceive Plaintiff and the Class, were statements that may deceive or tend to deceive, were willfully used to deceive Plaintiff and the Class, and did in fact deceive Plaintiff and the Class.

110. But for these representations, concealments, and omissions of material fact, Plaintiff and the Class Members would not have suffered the harms detailed herein.

111. The Greystar Defendants' deceptive trade practices are knowing and willful and entitle Plaintiff and the Class to recover damages on all profits, treble damages, and equitable relief. NRS § 598.0999.

112. Because the Greystar Defendants' deceptive trade practices are toward persons on fixed income, including the elderly and disabled people, the Greystar Defendants are subject to punitive damages and are required to pay Plaintiff's reasonable attorney's fees. NRS § 598.09735.

113. Each exposure of Plaintiff and the Class to the aforementioned conduct of the Greystar Defendants constitutes a separate violation of the NDTPA.

114. Each exposure of Plaintiff and the Class to Greystar's deceptive practices has resulted in actual injury and harm to Plaintiff and the Class in the amount of fees that they were charged in violation of Nevada law and/or in excess of the terms of their leases.

115. Moreover, Plaintiff and the Class have suffered extreme anxiety and emotional distress because of Greystar's illicit practices.

116. Plaintiff and the Class continue to be in the market for rental properties in the state of Nevada and are likely to be harmed in the future by the Greystar Defendants' deceptive practices unless those practices are enjoined, given that Greystar is one of the largest property mangers in the state.

117. Plaintiff and the Class therefore seek all legal and equitable relief as allowed by law, including *inter alia* general and compensatory damages, punitive damages, equitable relief, and all recoverable damages under the Deceptive Trade Practices Act, attorney fees and costs, and pre- and post-judgment interest.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

## VII.
## SECOND CAUSE OF ACTION

***(Consumer Fraud)***

118. Plaintiff repeats, re-alleges, and incorporates herein by reference paragraphs 1 through 108 above as if fully set forth herein.

119. Plaintiff and the Class were victims of the acts of consumer fraud described in Section VI, above. *See* NRS 41.600.

120. Plaintiff and the Class suffered pecuniary losses as a result of the Greystar Defendants' acts of consumer fraud in the amount of fees they were charged in violation of Nevada law and/or in excess of the terms of their leases.

121. Plaintiff and the Class have suffered extreme anxiety and emotional distress because of the Greystar Defendants' acts of consumer fraud.

122. Plaintiff and the Class, therefore, seek all legal and equitable relief allowed by law, including their costs and attorney's fees.

## VII.
## RELIEF REQUESTED

**WHEREFORE**, Plaintiff and the members of the Class seek an Order:

1. Certifying the proposed Class pursuant to Rule 23, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

2. Declaring that Greystar is financially responsible for notifying the Class members of the pendency of this suit;

3. Declaring that Greystar has committed the violations of law alleged herein;

4. Providing for any and all injunctive relief the Court deems appropriate;

5. Awarding general and compensatory damages in an amount according to proof;

6. Awarding damages on all profits the Greystar Defendants derived from knowing and willful engagement in the deceptive trade practices outlined above and treble damages on all

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

damages suffered by Class members because of the deceptive trade practice pursuant to NRS 598.0999;

7. Awarding damages pertaining to mental and emotional distress in an amount according to proof;

8. Awarding exemplary and punitive damages in an amount to be determined at trial;

9. Awarding attorneys' fees and costs, as permitted by NRS 598.0977 and NRS 41.600;

10. Awarding pre and post-judgment interest on any award rendered in connection with this civil action.

11. Providing such further relief as the Court deems just and proper.

DATED this 29th day of December, 2025.

**PAUL PADDA LAW, PLLC**

/s/ *Ravi Chanderraj*
RAVI CHANDERRAJ, ESQ.
Nevada Bar No. 17053
4560 S. Decatur Boulevard, Ste. 300
Las Vegas, Nevada 89103

*Attorney for Plaintiff Jaslyn Cosey*

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of December 2025, a true and correct copy of the foregoing **AMENDED CLASS ACTION COMPLAINT** was served by Notice of Case Management/Electronic Case Filing (CM/ECF) of the United States District Court, District of Nevada, to all individuals and/or entities on the ECF Service List.

*/s/ Nicole Moran*

An Employee of:
**PAUL PADDA LAW**