PAUL S. PADDA, ESQ.
Nevada Bar No. 10417
*Email: psp@paulpaddalaw.com*
TERRY L. WIKE, ESQ.
Nevada Bar No. 7211
*Email: twike@paulpaddalaw.com*
**PAUL PADDA LAW, PLLC**
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Phone: (702) 366-1888
Facsimile: (702) 366-1940
*Attorneys for Plaintiff*

**PAUL PADDA LAW, PLLC**
**6605 Las Vegas Blvd. South, Suite 203**
**Las Vegas, Nevada 89119**
**Tele: (702) 366-1888 • Fax (702) 366-1940**

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JASLYN COSEY (an individual),

Plaintiff,

vs.

RUSSELL ROAD TIC I LLC d/b/a GLO LAS VEGAS (a foreign limited liability company); TIC MANAGER LLC (a foreign limited liability company); GREP SOUTHWEST, LLC, DBA GREYSTAR (a foreign limited liability company); and DOES I through XX, inclusive,

Defendants.

Case No.: 2:25-cv-02069-JAD-EJY

**SECOND AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

COMES NOW, Plaintiff Jaslyn Cosey ("Plaintiff"), by and through her counsel of record, Paul S. Padda, Esq. and Terry L. Wike, Esq., of Paul Padda Law, PLLC, and, on behalf of herself and all others similarly situated, alleges as follows against Defendants Russell Road TIC I LLC, TIC Manager LLC, and GREP Southwest, LLC, d/b/a Greystar. Allegations concerning Plaintiff and her own acts are made on personal knowledge; all other allegations are made on information and belief formed after reasonable inquiry.

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

## I.

## PRELIMINARY STATEMENT

1. This is a class action on behalf of tenants of Nevada apartment communities managed by Defendant GREP Southwest, LLC, d/b/a Greystar, who were charged attorney's fees and "legal charges" without any court order authorizing those fees. Nevada law prohibits a residential rental agreement from requiring a tenant to pay the landlord's attorney's fees and declares any such provision void as contrary to public policy. NRS 118A.220(1)(c), (2).

2. Defendants nonetheless assess a $75 charge against a tenant's account when the tenant's rent is paid late. Defendants' own accounting records classify that charge as "Attorney Or Legal Charges" under the charge code "ATTRNY," and Defendants assess it on top of a separate late fee that Defendants' own lease form describes as compensation for their "time, inconvenience, and overhead in collecting late rent."

3. Plaintiff, a disabled tenant living on fixed disability income, was charged these attorney's fees repeatedly during her tenancy at Glo Las Vegas. When Clark County's eviction-prevention program paid Defendants $10,727.84 to bring her account current, Defendants applied those public funds to the attorney's fees, declared her March 2025 rent unpaid, assessed still more attorney's fees, and served her with an eviction notice. When she complained, Defendants' community manager told her that charging tenants attorney's fees without a court order is Greystar's standard practice and dared her to challenge it in court.

4. Plaintiff brings this action under NRS 41.600, Nevada's Deceptive Trade Practices Act ("NDTPA"), NRS 118A.220, and the agreements Defendants signed to obtain Clark County eviction-prevention funds, on behalf of herself and similarly situated Nevada tenants to recover the unlawful charges and to obtain declaratory and injunctive relief. She also brings an individual claim under the federal Fair Housing Act for Defendants' refusal to accommodate her disability.

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

## II.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because (i) this is a class action in which the proposed Class contains at least 100 members; (ii) the aggregate amount in controversy, including compensatory damages, punitive damages, and statutory attorney's fees, exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one member of the proposed Class is a citizen of a State different from at least one Defendant.

6. Members of the proposed Class include citizens of Nevada. Under 28 U.S.C. § 1332(d)(10), each Defendant is a citizen of the State under whose laws it is organized and the State where it has its principal place of business. Each Defendant is organized under the laws of Delaware. Russell Road TIC I LLC and TIC Manager LLC have their principal places of business in California, and GREP Southwest, LLC has its principal place of business in South Carolina. No Defendant is a citizen of Nevada.

7. On information and belief, Greystar manages at least 43 residential rental communities in the Las Vegas Valley containing thousands of dwelling units, and it assesses the attorney and legal charges described below as a standard practice when a tenant's rent is paid late. The charges assessed to the Class during the class period, together with the punitive damages and attorney's fees recoverable by statute, exceed $5,000,000.

8. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 3613 over Plaintiff's claim under the Fair Housing Act, and supplemental jurisdiction under 28 U.S.C. § 1367(a) over her state-law claims, which form part of the same case or controversy.

9. This Court has personal jurisdiction over each Defendant because each owns, leases, or manages residential property in Clark County, Nevada, and Plaintiff's claims arise from that conduct.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Clark County, Nevada, where Glo Las Vegas is located.

**III.**

**PARTIES**

11. Plaintiff Jaslyn Cosey is an individual. From September 1, 2023 until August 7, 2025, she leased and resided in Unit 2016 at Glo Las Vegas, 5035 East Russell Road, Las Vegas, Nevada 89122 ("Glo Las Vegas"). Plaintiff is a person with a disability.

12. Defendant Russell Road TIC I LLC ("Russell Road TIC I") is a Delaware limited liability company headquartered in Los Angeles, California, and is licensed to do business in Nevada. In November 2019, GS Russell Project Owner, LLC, an entity in care of Greystar Real Estate Partners, conveyed Glo Las Vegas for $32,000,000 to Russell Road TIC I, which took an undivided 50.25% interest, and to Russell Road TIC II LLC, Russell Road TIC III LLC, and Russell Road TIC IV LLC, which took the remaining interests, all as tenants in common. Grant, Bargain, Sale Deed, Clark County Recorder Instr. No. 20191120-0001791. Russell Road TIC I is thus the majority owner of Glo Las Vegas.

13. Defendant TIC Manager LLC ("TIC Manager") is a Delaware limited liability company headquartered in Los Angeles, California. On information and belief, TIC Manager serves as the manager of Russell Road TIC I. Plaintiff's leases identify TIC Manager as the "Owner" of Glo Las Vegas. *See* ECF No. 32-1 at 4. In a July 24, 2025 email to Plaintiff, Defendants' eviction counsel acknowledged that "there may have been a clerical error on your lease which listed TIC manager LLC as the owner," stated that the owner is "Russell Road TIC I which does business under the name GLO Las Vegas," and stated that "[t]he current authorized agent of the property is Greystar management."

14. Defendant GREP Southwest, LLC, d/b/a Greystar ("Greystar") is a Delaware limited liability company headquartered in Charleston, South Carolina. Greystar is the property manager of Glo Las Vegas and of other residential communities in Nevada. Defendants have

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

confirmed that Greystar is the Greystar entity responsible for on-site management of Glo Las Vegas. ECF No. 11 at 5. Russell Road TIC I, TIC Manager, and Greystar are referred to collectively as "Defendants."

15. At all relevant times, Greystar acted as the agent of Russell Road TIC I and TIC Manager in leasing dwelling units at Glo Las Vegas, preparing and administering leases, billing tenants, assessing charges, collecting payments, and serving notices. Russell Road TIC I and TIC Manager authorized that conduct, accepted the revenue it generated, and are liable for it. Each Defendant is liable for the acts of the others alleged herein.

16. The true names and capacities of Defendants Does I through XX are unknown to Plaintiff. On information and belief, Does I through XX participated in or facilitated the conduct alleged herein. Plaintiff will seek leave to amend to state their true names and capacities when they are ascertained.

## IV.

## FACTUAL ALLEGATIONS

### *A. Greystar's Management of Nevada Apartment Communities*

17. Greystar and its affiliates hold themselves out as the largest operator of apartments in the United States. On information and belief, Greystar manages at least 43 residential rental communities in the Las Vegas Valley.

18. Greystar enters into property management agreements with the owners of the communities it manages. Under those agreements, Greystar is responsible for leasing units, preparing and administering leases, billing tenants, collecting payments, pursuing delinquent accounts, and handling tenant relations.

19. On information and belief, Greystar uses standardized lease forms, standardized accounting charge codes, and standardized delinquency procedures across the Nevada communities it manages, including the charge code "ATTRNY" and the practice of assessing an attorney or legal charge when rent is paid late.

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

20. On information and belief, Greystar's management compensation is calculated in whole or in part as a percentage of the revenue collected from tenants, which includes nonrefundable charges such as the attorney and legal charges at issue. Greystar therefore has a direct financial interest in assessing and collecting those charges.

21. At all relevant times, the on-site staff of Glo Las Vegas with whom Plaintiff dealt, including community managers Leslie Perez, Michael De La Cruz, Hunter Pewitt, and Esther Barba, leasing consultants Jimmitrice Winters and Cynthia O'Neal, and assistant managers Lamiricle Cleveland and Jamilah Hampton, were employed by Greystar and acted within the scope of that employment.

***B. Plaintiff's Lease and the $75 "Notice Fee"***

22. Plaintiff signed a lease for Unit 2016 at Glo Las Vegas on August 20, 2023, for a term beginning September 1, 2023, at a monthly rent of $1,598. On July 29, 2024, Plaintiff signed a renewal lease for a term of October 1, 2024 through September 30, 2025, at a monthly rent of $1,614. ECF No. 32-1 at 49. Both leases were prepared by Defendants on Defendants' standard form (collectively, the "Lease"), and their terms were not negotiable. Defendants have filed the Lease in this action. ECF No. 24-1; ECF No. 32-1 at 9–89. A Greystar employee, Cynthia O'Neal, countersigned the initial lease on behalf of the landlord. *See* ECF No. 32-1 at 115.

23. The Lease's "Other Remedies" provision states that late charges "are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs)." ECF No. 24-1 at 6. Under the Lease, therefore, the late fee compensates Defendants for the time, inconvenience, and overhead of collecting late rent.

24. The Lease's late-charge provision sets the late fee at 5% of the total monthly rent and states that "[t]he overall late fee cannot exceed 5% of periodic rent." ECF No. 32-1 at 10. Nevada law likewise provides that a late fee "must not exceed 5 percent of the amount of the periodic rent." NRS 118A.210(4)(b).

25. The only provision of the Lease that permits recovery of attorney's fees is its default provision, which allows "the prevailing party" to recover attorney's fees and litigation

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

costs from the non-prevailing party. ECF No. 32-1 at 14. That is the only form of attorney's-fee provision Nevada law permits in a residential lease. NRS 118A.220(1)(c).

26. The Lease separately contains, in its "Special Provisions," the following "Lease Violation Notice" provision (the "Notice Fee Provision"), ECF No. 24-1 at 8:

> SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) LEASE VIOLATION NOTICE: In the event that the Landlord is required to serve Resident(s) notice of any lease violation notice; Resident shall be liable for payment of $75.00 Notice Fee per occurrence. Pursuant to this provision, Resident shall remit payment of a non-refundable cleaning fee in the sum of $150.00. The parties agree that the non-refundable cleaning fee is not a deposit and stipulate that the fee paid pursuant to this provision is intended to cover basic cleaning upon the turning of the leased premises. The payment of this fee does not absolve Resident from the obligations under the lease to return the leased premises in a clean and damage free condition. The non-refundable fee does not cover nor will it offset any charges for carpet cleaning, repair or replacement or any other damages sustained to the leased premises that require repair. Any such charges will be deducted from any refundable deposit required by the terms of this lease, with any remaining balance being due and owing from Resident.

27. The Notice Fee Provision, which appears in both the initial and renewal leases, ECF No. 24-1 at 8; ECF No. 32-1 at 16, 56, states: "In the event that the Landlord is required to serve Resident(s) notice of any lease violation notice; Resident shall be liable for payment of $75.00 Notice Fee per occurrence." Unlike the late-charge provision, the Notice Fee Provision does not describe the $75 as liquidated damages, does not tie it to any cost Defendants actually incur, and does not condition it on any order of a court.

28. On information and belief, the Notice Fee Provision, or a provision materially identical to it, appears in the standard lease forms used at the Nevada communities Greystar manages.

### *C. Defendants Charge Plaintiff "Attorney Or Legal Charges" Without a Court Order*

29. Plaintiff sustained a back injury in 2017 and later developed degenerative disc disease. Her condition progressed to the point that she became unable to work. In or about April 2024, Plaintiff began receiving short-term disability benefits, and in or about October 2024, after her condition was diagnosed as a chronic disability, she transitioned to long-term disability benefits. Plaintiff has also been diagnosed with high blood pressure and anxiety.

30. During her tenancy, Plaintiff was at times unable to pay her rent by the first day of the month. Her long-term disability benefits are paid after the first of each month, while rent under the Lease was due on the first.

31. In most months in which Plaintiff's rent was paid after the first of the month, Defendants assessed two separate charges against her account: a late fee, and a separate charge of at least $75 that Defendants recorded in her tenant ledger as "Attorney Or Legal Charges."

32. For example, Plaintiff's tenant ledger reflects that on November 5, 2023, Defendants assessed "November late fees" of $79.90 under the charge code "LATEFEE," and that two days later, on November 7, 2023, Defendants assessed a separate charge of $75.00 described as "Attorney Or Legal Charges – Cosey" under the charge code "ATTRNY":

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2016 | 11/07/2023 | 112023 | | | ATTRNY | Attorney Or Legal Charges - Cosey | | 75.00 | 0.00 | | 1,922.70 |
| 2016 | 11/05/2023 | | | | LATEFEE | November late fees | | 79.90 | 0.00 | | 1,847.70 |

33. Defendants thus recorded and treated the $75 charge as an attorney or legal charge, distinct from the late fee that, by the Lease's own terms, compensates Defendants for their time, inconvenience, and overhead in collecting late rent. The $79.90 late fee was itself the full 5% maximum. Together with the $75 charge assessed for the same late payment, Defendants charged Plaintiff $154.90, approximately 9.7% of her periodic rent, because her November 2023 rent was late.

34. Defendants continued to assess attorney or legal charges against Plaintiff's account throughout her tenancy. The resident ledger that Defendants themselves filed in the Las Vegas Justice Court records twelve charges under the ATTRNY code between November 2023 and June 2025, totaling $1,000: $75.00 on November 7 and December 6, 2023; January 8, March 10, April 8, May 11, June 12, July 9, September 12, and November 6, 2024; and June 11, 2025; and $175.00 on December 11, 2024. Defendants' ledger describes the November 6, 2024 ATTRNY charge as a "30 Day Notice Fee" and the December 11, 2024 charge as "Attorney Or Legal Charges – Cosey, Jaslyn Starr." Nearly every ATTRNY charge followed a late fee by one to seven days.

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

35. Defendants' own account records show that the November 7, 2023 charge coincided with a 30-day notice that Defendants sent to Plaintiff "via Bulk Activity," and that Defendants generated such notices in bulk nearly every month thereafter. ECF No. 32-1 at 116–17. No court ever entered an order awarding attorney's fees against Plaintiff; the order for summary eviction later entered against her, described below, awarded possession and nothing else. On information and belief, Defendants assessed the attorney or legal charges through their accounting system as a matter of course whenever rent was paid late, without any court order and without regard to whether any attorney's fees had actually been incurred.

36. In a May 15, 2025 email to Plaintiff, Michael De La Cruz, then the Community Manager of Glo Las Vegas and a Greystar employee, described the charges as covering "a range of expenses beyond just court appearances," and explained that "the cost of serving a 30-day notice is considered part of these fees." Mr. De La Cruz thereby confirmed that Defendants charge tenants these fees to recover the landlord's legal costs, including the costs of court appearances and of legal notices.

37. On June 17, 2025, Community Manager Hunter Pewitt, a Greystar employee, wrote to Plaintiff from Glo Las Vegas's @greystar.com email account that "[t]he legal fee added to your ledger on June 11th pertains to the 30 Day Pay or Quit notice served May 30th, 2025," and that "[t]his fee is outlined in the Special Provisions section of your lease agreement." Defendants' own manager thus identified the charge Defendants assess under the Notice Fee Provision as a "legal fee."

38. NRS 118A.220(1)(c) provides that a rental agreement shall not provide that the tenant "[a]grees to pay the landlord's attorney's fees, except that the agreement may provide that reasonable attorney's fees may be awarded to the prevailing party in the event of court action." As this Court has recognized, the statute "prohibits landlords from collecting attorney's fees without a court order." ECF No. 38 at 2. Under NRS 118A.220(2), a prohibited provision is void as contrary to public policy, and the tenant may recover any actual damages incurred through the inclusion of the prohibited provision.

39. Defendants drafted the Notice Fee Provision, created and used the "ATTRNY" charge code, and assessed the charges. Defendants therefore knew the facts that made the charges unlawful.

***D. Defendants Refuse Rent Payments and Divert Public Rental Assistance to the Unlawful Charges***

40. Defendants refused to accept Plaintiff's payments of rent and lawful charges unless those payments also included the attorney or legal charges. In his May 15, 2025 email, Mr. De La Cruz informed Plaintiff that "only payment for [the] full amount" would be accepted. The "full amount" included the attorney or legal charges. Defendants also restricted how Plaintiff could pay, blocking payment by check or money order on multiple occasions and, on April 1, 2025, requiring payment in certified funds "due to March balance pending." ECF No. 32-1 at 117–18.

41. In 2024, Defendants referred Plaintiff to rental-assistance resources, and Plaintiff applied to the Clark County CARES Housing Assistance Program ("CHAP"), an eviction-prevention program operated by Clark County, Nevada. ECF No. 32-1 at 116–17. Defendants' records reflect that on or about December 10, 2024, while Plaintiff's CHAP application was pending, Defendants initiated eviction proceedings against her and gave notice of a move-out date of February 10, 2025. *Id.* at 117.

42. On December 15, 2024, Defendants submitted to Clark County an Eviction Prevention Landlord Verification Form for Plaintiff, signed by Assistant Property Manager Jamilah Hampton on behalf of "Glo Las Vegas" as "Landlord/Management Co." and returned from Glo Las Vegas's @greystar.com email account. The form listed rent of $1,614 per month and a separate late fee of $80.70—exactly 5% of rent—for each of October, November, and December 2024. It then listed, as separate line items, "Other: Legal" charges of $75.00 for November 2024 and $175.00 for December 2024, and asked the County to pay a total that included them. The form itself recites that, "[p]er NRS118A.210.4 late fees must not exceed 5% of periodic rent."

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

43. In the same form, Defendants agreed: “In exchange for payment of funds by Eviction Prevention, I agree, on behalf of myself, my business entities, principals, agents, and assigns, to not initiate any legal proceeding or collection effort against any of the above Tenants for unpaid rent, late fees, or other fees or charges relating to occupancy of the dwelling unit retroactive to March 1, 2020, through and until the present date or the end of period for which rent is being paid, whichever is longer, and all claims regarding such amounts are hereby waived and released.” Defendants further agreed “to rescind any prior eviction notice” and “to allow Tenants to reside in the dwelling unit for a period of not less than 60 days from receipt of payment of these funds without eviction proceedings commencing.” (The “Landlord Verification Agreement.”)

44. On December 20, 2024, a Clark County Family Services Specialist notified Defendants by email that Plaintiff had been approved for rental assistance for “the requested months of 10/01/2024-03/31/2025 in the amount of $10,727.84,” that Plaintiff would be responsible for any additional fees associated with January through March, and that she would “resume paying her rental obligation in full starting April 2025.” Defendants cancelled their move-out notice upon receiving the approval. ECF No. 32-1 at 117. CHAP paid the funds directly to Defendants. The period for which rent was being paid under the Landlord Verification Agreement therefore ran through March 31, 2025.

45. Defendants applied the CHAP funds not only to Plaintiff’s rent and lawful charges, but also to the accumulated attorney or legal charges on her account. In his May 15, 2025 email, Mr. De La Cruz confirmed: “your CHAP payment was applied to the balance due at the time it was received, including any associated legal fees.”

46. Having diverted $250 of the CHAP funds to the attorney or legal charges, Defendants informed Plaintiff in March 2025 that the funds were insufficient to cover her March 2025 rent. According to Defendants’ own ledger, after the CHAP funds were applied to all charges on the account, including the legal charges, damage-waiver fees, parking, and utilities, a balance of $115.88 remained once March 2025 rent posted. Defendants posted a balance notice

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

on or about March 17, 2025, and on or about April 11, 2025 served Plaintiff with a 30-day notice anticipating the filing of an eviction action in May 2025. ECF No. 32-1 at 118.

47. Each of these steps violated the Landlord Verification Agreement. Having agreed, in exchange for public funds that paid Plaintiff's rent through March 31, 2025, not to pursue any "collection effort" or "legal proceeding" for rent, late fees, or other charges through that period, and having waived and released all claims to those amounts, Defendants nonetheless treated Plaintiff as delinquent from March 1, 2025, demanded payment of a balance that included March 2025, and pursued eviction based in part on that balance.

48. Had Defendants not applied $250 of the CHAP funds to attorney or legal charges, Plaintiff's account would have carried a credit of $134.12 after her March 2025 rent posted, and no balance or notice would have been issued based on her March 2025 rent.

49. On or about May 17, 2025, Plaintiff met in person with Mr. De La Cruz at Glo Las Vegas to resolve the matter. Plaintiff complained that Defendants had used her CHAP funds to pay attorney's fees and had pursued eviction based on her March 2025 rent, which CHAP had funded. Mr. De La Cruz told Plaintiff that her CHAP funds were insufficient to cover her March 2025 rent inclusive of legal fees and that the fees would not be reduced.

50. During the same meeting, Mr. De La Cruz told Plaintiff that he had worked at several Greystar properties, that it is Greystar's standard practice to charge tenants attorney's fees, without a court order, every time they are late with their rent, and that she was welcome to challenge the practice in court.

51. In a separate May 15, 2025 email, Mr. De La Cruz told Plaintiff that the amount "that must be paid to avoid eviction" was $2,022.39, and that if it was not paid by May 19, 2025, "I will proceed with filing the eviction, at which point the full ledger balance of $3,896.03 will become due." The $3,896.03 figure exceeded the balance Defendants later sought in the Justice Court by exactly $75, the amount of a notice fee that, according to Mr. Pewitt, a previous manager later removed. *See* ¶ 37.

**PAUL PADDA LAW, PLLC**
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

52. In May and June 2025, Plaintiff repeatedly attempted to pay the rent she owed, and Defendants refused to accept it. On or about May 21, 2025, Mr. De La Cruz instead proposed that if Plaintiff agreed to move out within seven days, she would not have to pay the past-due balance. On June 11, 2025, after Plaintiff again asked whether Defendants would accept her rent, Assistant Property Manager Jamilah Hampton responded that the total balance of $3,821.03 "would need to be paid in full via certified funds (Cashiers Check)," that "the chap payment was distributed correctly and does not have the ability to be reallocated," and that questions about the balance should be directed to Defendants' attorneys. The balance Defendants required as a condition of accepting any payment included utility, damage-waiver, and parking charges, not only rent.

53. After the May 17, 2025 meeting, Defendants continued to assess attorney or legal charges against Plaintiff's account when her rent was paid late.

54. In the same June 17, 2025 email, Mr. Pewitt informed Plaintiff that the balance due under the May 30, 2025 notice was $3,821.03 for March through May and that "[t]his balance must be paid by July 1st or eviction will be filed." Defendants then pursued eviction through counsel in the Las Vegas Justice Court, where, at a July 22, 2025 hearing, the court directed Plaintiff to deposit the undisputed portion of her rent with the court. *TIC Manager LLC dba Glo Las Vegas v. Cosey*, No. 25E019580 (Las Vegas Just. Ct.). Defendants' eviction complaint, signed by their counsel under penalty of perjury on July 2, 2025, swore that Plaintiff's rent "became delinquent on MARCH 01, 2025," a month the County had paid, and described $3,740.33 as "periodic rent," although that figure included utility, damage-waiver, and parking charges and an April late fee. The eviction complaint was filed in the name of TIC Manager, the entity Defendants' counsel would describe two days later as the subject of a "clerical error." On July 30, 2025, the court entered an order for summary eviction; on August 5, 2025, it denied Plaintiff's emergency motion to stay, which included a request for a reasonable accommodation of her disability; and Plaintiff vacated on August 7, 2025.

**PAUL PADDA LAW, PLLC**
**6605 Las Vegas Blvd. South, Suite 203**
**Las Vegas, Nevada 89119**
**Tele: (702) 366-1888 • Fax (702) 366-1940**

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

55. This action does not challenge the Justice Court's order awarding possession. The summary eviction proceeding determined only the landlord's right to possession. The order for summary eviction contains no findings and awards no money, attorney's fees, or other relief; the Justice Court denied Plaintiff's first motion to stay as premature and her second for lack of good cause to delay the lockout. The Justice Court did not adjudicate, and in a summary eviction proceeding could not have adjudicated, the claims for damages, declaratory relief, and class relief asserted here.

56. Plaintiff paid the attorney or legal charges assessed against her, both from her own funds and through the CHAP funds Defendants applied to them, because Defendants refused to accept her rent without them and threatened her tenancy. For example, Defendants' own ledger, filed in the Justice Court (*see* ¶ 34), shows that Plaintiff made payments of $1,922.70 on November 20, 2023, $1,891.65 on December 28, 2023, and $1,889.88 on January 26, 2024, each of which covered that month's rent, late fee, and $75.00 attorney or legal charge.

57. After Plaintiff moved out on August 7, 2025, Defendants reported her to a tenant-screening database as "Evicted for non-payment of rent" and as having a balance due, and on August 14, 2025 exported her account to collections. ECF No. 32-1 at 118–19. On information and belief, the balance Defendants reported and sent to collections included attorney or legal charges.

58. As a direct result of Defendants' conduct, Plaintiff lost money in the amount of the attorney or legal charges she paid, lost the benefit of public rental assistance that was diverted to those charges, incurred additional late fees and charges, was reported to a tenant-screening database and to collections for a balance that included those charges, and suffered anxiety and emotional distress that her disabilities made worse.

59. Plaintiff intends to move back to Las Vegas and to rent residential housing there. Because Greystar manages many of the area's apartment communities, Plaintiff is likely to encounter Defendants' charging practices again and cannot rely on Defendants' representations about the fees she would owe.

### *E. Defendants Refuse to Accommodate Plaintiff's Disability*

60. In or around November 2024, Plaintiff informed Lamiricle Cleveland, then the Assistant Manager of Glo Las Vegas and a Greystar employee, that her disability benefits were paid after the first of each month, and she asked Defendants to accommodate her disability by adjusting her rent payment schedule to align with her receipt of those benefits.

61. Defendants refused. Defendants insisted that Plaintiff pay her rent on the first of each month regardless of when her disability benefits arrived, and they continued to treat each payment made after the first as late and to assess late fees and attorney or legal charges.

62. Plaintiff renewed her disability-related requests in 2025. In emails on May 21 and June 11, 2025, she reminded Defendants that she is disabled, that the dispute was aggravating her anxiety and causing physical pain, and that she needed Defendants to communicate with her by email. On June 17, 2025, she wrote to Defendants under the subject line "Rent accommodation."

63. On or about July 18, 2025, Plaintiff wrote to Greystar Regional Manager Brent McPherson that she had not received a response to her "fair housing medical accommodations" request and that her apartment manager had been ignoring it "for over a month." Mr. McPherson replied: "I think with the pending court case; we are awaiting direction. Payment needs to be brought up to current for us to agree to any updates to due dates." Defendants thus conditioned the requested change to Plaintiff's due date on her first paying the full balance Defendants claimed, including disputed charges. On July 25, 2025, Plaintiff wrote to Greystar Regional Manager Brent McPherson again to follow up on the reasonable-accommodation request she had submitted weeks earlier, explaining that she needed additional time to move because of her disability and that she had "also asked if I could change my payment date so that you guys can stop charging me late fees every month and legal fees on top of my rent." Mr. McPherson responded the same day: "This is a court related matter and in the courts hands. Once a judgment is made; we can discuss your request." Defendants never granted either request.

64. Defendants knew of Plaintiff's disability. Defendants' own records reflect that on November 11 and 17, 2024, Plaintiff told Assistant Manager Lamiricle Cleveland that she was

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

on long-term disability awaiting back pay and was waiting to be switched from short-term to long-term disability, and that on June 13, 2025 she told Defendants she would pay when her disability check arrived. ECF No. 32-1 at 117–18. In addition, Defendants referred her to rental-assistance resources; and Plaintiff repeatedly informed Defendants' staff of her back condition, including when the May 15, 2025 meeting was rescheduled at her request because she was suffering from anxiety and back pain and in a June 17, 2025 email to Assistant Property Manager Jamilah Hampton explaining that a malfunctioning thermostat was forcing her to stand and sit repeatedly, which was extremely difficult because of her back injury.

65. The requested accommodation was reasonable. Plaintiff did not ask Defendants to reduce or forgive her rent; she asked only that the date on which full payment was due be aligned with the date on which her disability income arrived. The accommodation would have imposed no undue financial or administrative burden on Defendants.

66. The accommodation was necessary to afford Plaintiff an equal opportunity to use and enjoy her dwelling. Because of her disability, Plaintiff could not work, and her only income arrived after rent was due. Without the accommodation, Plaintiff faced recurring late fees and charges, a growing balance, and eviction proceedings that a tenant without her disability would not have faced.

## V.

## CLASS ALLEGATIONS

67. Plaintiff brings this action as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and, in the alternative, 23(c)(4), on behalf of the following class (the "Class"):

> All persons who, at any time from four years before the filing of this action through the date of class certification, leased a residential dwelling unit at a property in Nevada managed by GREP Southwest, LLC, and against whose tenant account Defendants assessed one or more charges recorded as attorney's fees or legal charges (including under the charge code "ATTRNY"), without a court order awarding attorney's fees against that person.

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

68. Plaintiff also seeks certification of the following subclasses:

> **Paid Subclass:** All members of the Class who paid any portion of such charges, whether directly or through funds paid on their behalf.
>
> **Rental Assistance Subclass:** All members of the Class (a) whose CHAP or other governmental or third-party rental assistance funds were applied, in whole or in part, to such charges, or (b) for whom Defendants executed a Clark County Eviction Prevention Landlord Verification Form.
>
> **Disability Subclass:** All members of the Class who are persons with a disability within the meaning of NRS 598.0977.

69. Excluded from the Class and Subclasses are: (1) any judge or magistrate judge presiding over this action, members of their staffs, and members of their immediate families; (2) Defendants, their parents, subsidiaries, affiliates, successors, and predecessors, any entity in which any of them has a controlling interest, and their current and former officers, directors, and employees; (3) persons who timely and properly request exclusion; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) counsel for the parties and their employees; and (6) the legal representatives, successors, and assigns of any excluded person.

70. Plaintiff reserves the right to modify the Class and Subclass definitions based on information obtained in discovery.

71. **Numerosity (Rule 23(a)(1)).** On information and belief, the Class consists of thousands of persons who leased units at the more than 40 Nevada communities Greystar manages. Joinder of all members is impracticable. Class members can be identified from Defendants' lease files and tenant ledger records, which record each attorney or legal charge by tenant, date, amount, and charge code.

72. **Commonality (Rule 23(a)(2)).** Defendants acted on grounds that apply generally to the Class through a standardized lease provision, a standardized charge code, and a standardized practice. Common questions of law and fact include:

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

a. whether the Notice Fee Provision and the attorney or legal charges assessed under it require tenants to pay the landlord's attorney's fees within the meaning of NRS 118A.220(1)(c);

b. whether the Notice Fee Provision, as written or as applied to assess attorney or legal charges, is void under NRS 118A.220(2);

c. whether assessing and collecting attorney or legal charges without a court order violates NRS 118A.220 and therefore constitutes a deceptive trade practice under NRS 598.0923(1)(c);

d. whether Defendants' ledger entries, statements, and demands for payment of attorney or legal charges knowingly misrepresented tenants' legal obligations in violation of NRS 598.092(8);

e. whether Defendants' practice of refusing rent payments that did not include attorney or legal charges, and of pursuing eviction for balances that included them, constitutes the use of coercion or duress in violation of NRS 598.0923(1)(d);

f. whether Defendants' practice of applying governmental rental assistance funds to attorney or legal charges constitutes an unconscionable practice in violation of NRS 598.0923(1)(e);

g. whether, to the extent the charges are not attorney's fees, charges assessed because rent was paid late cause total late charges to exceed the 5% limit of NRS 118A.210(4)(b);

h. whether Defendants breached the Landlord Verification Agreements they executed to obtain Clark County eviction-prevention funds;

i. whether Defendants acted knowingly;

j. the proper measure of damages, including the total of attorney or legal charges paid by members of the Class; and

k. whether the Class is entitled to declaratory and injunctive relief.

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

73. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the Class because they arise from the same lease provision, the same charge code, and the same practice of assessing attorney or legal charges without a court order.

74. **Adequacy (Rule 23(a)(4)).** Plaintiff will fairly and adequately protect the interests of the Class. She has no interests antagonistic to the Class, and she has retained counsel competent and experienced in complex litigation who will prosecute this action vigorously.

75. **Predominance (Rule 23(b)(3)).** Common questions predominate over individual questions. Liability turns on the meaning and legality of a standardized lease provision and a standardized charging practice, and damages can be calculated from Defendants' own ledger records.

76. **Superiority (Rule 23(b)(3)).** A class action is superior to other methods of adjudication. Individual charges are small, typically $75, so individual actions are economically impracticable; many Class members do not know the charges are void; and a single proceeding will avoid inconsistent adjudications.

77. **Declaratory and Injunctive Relief (Rule 23(b)(2)).** Defendants have acted or refused to act on grounds that apply generally to the Class, so final declaratory and injunctive relief is appropriate for the Class as a whole.

78. **Issue Certification (Rule 23(c)(4)).** In the alternative, Plaintiff seeks certification of particular issues, including whether the Notice Fee Provision and the attorney or legal charges violate NRS 118A.220.

## VI.

## FIRST CAUSE OF ACTION

***(Consumer Fraud — Deceptive Trade Practices, NRS 41.600, NRS 598.0923(1)(c)–(e), NRS 598.092(8), and NRS 598.0977)***
***(On Behalf of Plaintiff and the Class Against All Defendants)***

79. Plaintiff incorporates paragraphs 17 through 58 as if fully set forth herein.

80. NRS 41.600(1) and (2)(e) authorize any person who is a victim of a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive, to bring an action for damages,

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

equitable relief, and attorney's fees and costs. NRS 598.0977 further authorizes an action by a person with a disability who suffers damage or injury as a result of a deceptive trade practice. Plaintiff and the Class are victims of the deceptive trade practices alleged below, which Defendants committed in the course of their business of leasing residential dwelling units.

81. **Violation of a statute relating to the lease of goods or services (NRS 598.0923(1)(c)).** Defendants knowingly violated NRS 118A.220, a state statute relating to the lease of residential dwelling units, by including the Notice Fee Provision in their leases and by assessing and collecting attorney or legal charges from Plaintiff and the Class without a court order, as alleged in paragraphs 23 through 39.

82. **Alternatively, violation of NRS 118A.210(4) (NRS 598.0923(1)(c)).** Pleading in the alternative under FRCP 8(d)(2), to the extent the $75 charge is not an attorney's fee, it is a charge Defendants assessed because rent was paid late. Defendants charged the maximum 5% late fee and then added the $75 charge for the same late payment, causing total late charges to exceed 5% of periodic rent, in knowing violation of NRS 118A.210(4)(b) and the Lease's own 5% limit. *See* ¶¶ 24, 33.

83. **Misrepresentation of legal rights and obligations (NRS 598.092(8)).** Defendants knowingly misrepresented the legal rights and obligations of Plaintiff and the Class by representing that they were obligated to pay attorney or legal charges that Nevada law declares void. Specifically:

a. Defendants, through their tenant ledgers, represented to Plaintiff that she owed "Attorney Or Legal Charges," including the $75.00 charge recorded on November 7, 2023 under the "ATTRNY" code and $175 in such charges in December 2024, when Nevada law relieved her of any obligation to pay them;

b. in his May 15, 2025 email, Greystar Community Manager Michael De La Cruz represented to Plaintiff that the charges were properly assessed to cover expenses including "court appearances" and the service of a 30-day notice, that Defendants

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

had properly applied her CHAP payment to "associated legal fees," and that only payment of the "full amount," including those charges, would be accepted;

c. at the May 17, 2025 in-person meeting at Glo Las Vegas, Mr. De La Cruz represented to Plaintiff that the legal fees would not be reduced and that charging tenants attorney's fees without a court order was Greystar's standard practice;

d. in March and April 2025, Defendants represented, through their demand for payment, their balance notice, and the 30-day notice served on or about April 11, 2025, that Plaintiff's March 2025 rent was unpaid, when the shortfall resulted from Defendants' application of CHAP funds to void attorney or legal charges;

e. in his June 17, 2025 email, Community Manager Hunter Pewitt represented that the "legal fee" added to Plaintiff's ledger on June 11, 2025 was an applicable fee under the Special Provisions of her Lease, and that a balance including it "must be paid by July 1st or eviction will be filed"; and

f. in March through July 2025, Defendants represented, through their notices, demands, and sworn eviction complaint, that Plaintiff was delinquent from March 1, 2025 and owed a balance for that month, which Defendants had waived and released in the Landlord Verification Agreement.

84. Each of these representations was false because NRS 118A.220 made the Notice Fee Provision void as applied to attorney or legal charges and relieved Plaintiff of any obligation to pay them. On information and belief, Defendants made the same representations to the Class through the same ledger entries, account statements, and demands for payment.

85. **Coercion and duress (NRS 598.0923(1)(d)).** Defendants knowingly used coercion and duress in the lease transaction by refusing to accept Plaintiff's payments of rent and lawful charges unless they included the void attorney or legal charges; by applying public rental assistance intended for rent to those charges; by restricting her permitted methods of payment; by then declaring Plaintiff's rent unpaid and serving her with a 30-day notice threatening eviction; by demanding in June 2025 that she pay a balance including those charges "by July 1st or eviction

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

will be filed," then pursuing eviction; and by pursuing charges for the period CHAP paid that Defendants had agreed in writing not to collect. Defendants thereby used the threat of losing her home to compel payment of sums Plaintiff did not lawfully owe, which constitutes unlawful coercion.

86. **Unconscionable practice (NRS 598.0923(1)(e)).** Defendants knowingly took advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff and the Class to a grossly unfair degree. Defendants described the $75 charge in the Lease as a "Notice Fee" while recording it internally as an attorney or legal charge, so that tenants could not recognize the charge as one Nevada law forbids. Defendants then collected the charge from tenants who, like Plaintiff, were behind on rent, living on fixed incomes, and dependent on governmental eviction-prevention funds, and diverted those funds from rent to the charges, leaving tenants exposed to eviction.

87. Defendants acted knowingly because they were aware of the facts constituting each act and omission alleged above: they drafted the Notice Fee Provision, created the "ATTRNY" charge code, assessed the charges, applied the CHAP funds, restricted her payment methods, and served the 30-day notice.

88. As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Class suffered damages, including the attorney or legal charges they paid, rental assistance funds diverted to those charges, resulting late fees and charges, and adverse tenant-screening and collection reporting of balances that included those charges. Plaintiff individually also suffered anxiety and emotional distress.

89. Plaintiff and the Class are entitled to damages, equitable relief, and their attorney's fees and costs under NRS 41.600(3), and Plaintiff and the Disability Subclass are entitled to all relief available under NRS 598.0977. Because Defendants' conduct was oppressive, fraudulent, and malicious, Plaintiff and the Class are also entitled to punitive damages under NRS 42.005.

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

## VII.

## SECOND CAUSE OF ACTION

***(Void Lease Provision — NRS 118A.220)***
***(On Behalf of Plaintiff and the Class Against All Defendants)***

90. Plaintiff incorporates paragraphs 17 through 58 as if fully set forth herein.

91. NRS 118A.220(1)(c) prohibits a rental agreement from providing that the tenant agrees to pay the landlord's attorney's fees, permitting only a provision that reasonable attorney's fees may be awarded to the prevailing party in the event of court action. Under NRS 118A.220(2), any provision prohibited by subsection 1 is void as contrary to public policy, and the tenant may recover any actual damages incurred through the inclusion of the prohibited provision.

92. The Notice Fee Provision, as written and as applied by Defendants to assess charges recorded as "Attorney Or Legal Charges," requires tenants to pay the landlord's attorney's fees and legal costs without any award by a court. It is therefore void.

93. Defendants, as the owner, landlord, and landlord's managing agent of Glo Las Vegas and the other Nevada communities Greystar manages, included the Notice Fee Provision in their leases and assessed and collected charges under it. Greystar is liable under this claim even though it denies being a landlord, because Greystar was authorized to and did enter into rental agreements on the landlord's behalf, and under NRS 118A.260(4) "[t]he obligations of the landlord devolve upon the persons authorized to enter into a rental agreement on his or her behalf." Defendants' own eviction counsel has described Greystar as the property's "authorized agent." *See* ¶ 13.

94. Plaintiff and the Class incurred actual damages through the inclusion of the prohibited provision, including the amounts of attorney or legal charges they paid and the late fees and other charges that resulted when Defendants applied tenant payments and rental assistance to those charges.

95. Plaintiff and the Class are entitled to recover their actual damages and to a declaration that the Notice Fee Provision is void insofar as it requires tenants to pay attorney or legal charges without a court order.

**VIII.**

**THIRD CAUSE OF ACTION**

***(Fair Housing Act — Failure to Make Reasonable Accommodation, 42 U.S.C. §§ 3604(f)(2), 3604(f)(3)(B), 3613)***

***(On Behalf of Plaintiff Individually Against All Defendants)***

96. Plaintiff incorporates paragraphs 29 through 30, 41 through 46, and 60 through 66 as if fully set forth herein.

97. Plaintiff has a handicap within the meaning of 42 U.S.C. § 3602(h): her degenerative disc disease substantially limits major life activities, including working, standing, and sitting; it has been diagnosed as a chronic disability; and it qualifies her for long-term disability benefits.

98. Glo Las Vegas is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

99. Defendants knew of Plaintiff's handicap. In or around November 2024, and again in 2025, Plaintiff requested that Defendants accommodate her handicap by aligning her rent due date with her receipt of her disability benefits. In July 2025, she also requested additional time to move because of her disability.

100. The requested accommodation was reasonable and was necessary to afford Plaintiff an equal opportunity to use and enjoy her dwelling.

101. Defendants refused to make the requested accommodations in their rules, policies, practices, or services, conditioned any change to her due date on her first paying the full balance they claimed, and deferred any response to her July 2025 requests until after judgment in the eviction they were prosecuting, in violation of 42 U.S.C. § 3604(f)(3)(B), and thereby discriminated against Plaintiff in the terms, conditions, or privileges of her rental because of her handicap, in violation of 42 U.S.C. § 3604(f)(2).

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

102. Russell Road TIC I and TIC Manager are liable for the discriminatory conduct of Greystar and its employees, who acted as their agents.

103. As a direct and proximate result of Defendants' refusal, Plaintiff incurred late fees and attorney or legal charges, faced eviction proceedings, and suffered emotional distress, humiliation, and anxiety.

104. Defendants acted intentionally and with reckless disregard for Plaintiff's federally protected rights.

105. Under 42 U.S.C. § 3613(c), Plaintiff is entitled to actual and punitive damages, appropriate injunctive relief, and her reasonable attorney's fees and costs.

## IX.

## <u>FOURTH CAUSE OF ACTION</u>

***(Breach of Contract — Third-Party Beneficiary)***
***(On Behalf of Plaintiff and the Rental Assistance Subclass Against All Defendants)***

106. Plaintiff incorporates paragraphs 41 through 55 as if fully set forth herein.

107. The Landlord Verification Agreement is a contract between Defendants and Clark County under which Defendants, in exchange for payment of public eviction-prevention funds, agreed not to initiate any legal proceeding or collection effort against the named tenant for rent, late fees, or other charges relating to occupancy through the end of the period for which rent was being paid, waived and released all claims to those amounts, and agreed to rescind prior eviction notices and refrain from eviction proceedings for at least 60 days.

108. The Agreement was made expressly for the benefit of the named tenant. It identifies the tenant by name, its promises run in the tenant's favor, and its release of claims protects only the tenant. Plaintiff and the members of the Rental Assistance Subclass are intended third-party beneficiaries entitled to enforce it.

109. Defendants received the funds, which paid Plaintiff's rent through March 31, 2025. Clark County performed. On information and belief, Defendants executed the same form agreement for other Class members.

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940

110. Defendants breached the Agreement by treating Plaintiff as delinquent from March 1, 2025, demanding payment of a balance that included March 2025, and pursuing eviction based in part on that balance, as alleged in paragraphs 46 through 55. On information and belief, Defendants breached their agreements with other Rental Assistance Subclass members in the same manner.

111. As a direct and proximate result, Plaintiff and the Rental Assistance Subclass suffered damages, including amounts charged and demanded for periods covered by the Agreements and the costs of the collection efforts the Agreements prohibited.

## X.

## <u>RELIEF REQUESTED</u>

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, requests that the Court enter judgment against Defendants and an Order:

1. Certifying the Class and Subclasses under Rule 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

2. Directing notice to the Class at Defendants' expense;

3. Declaring that the Notice Fee Provision is void under NRS 118A.220 insofar as it requires tenants to pay attorney or legal charges without a court order, and that Defendants' assessment and collection of such charges violates NRS 118A.220 and the NDTPA;

4. Enjoining Defendants from assessing or collecting attorney or legal charges from Nevada tenants without a court order and from applying tenant payments or rental assistance to such charges, and requiring Defendants to remove such charges from tenant accounts and to correct tenant-screening and collection reports of balances that include them;

5. Awarding Plaintiff and the Rental Assistance Subclass damages for Defendants' breach of the Landlord Verification Agreements;

6. Awarding Plaintiff and the Class compensatory damages, including restitution of all attorney or legal charges paid and resulting charges, in an amount to be proven at trial;

7. Awarding Plaintiff damages for emotional distress on her individual claims;

8. Awarding punitive damages under NRS 42.005 and 42 U.S.C. § 3613(c);

9. Awarding reasonable attorney's fees and costs under NRS 41.600(3), NRS 598.0977, and 42 U.S.C. § 3613(c);

10. Awarding pre-judgment and post-judgment interest as allowed by law; and

11. Granting such further relief as the Court deems just and proper.

**XI.**

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

DATED this 9th day of November, 2026.

**PAUL PADDA LAW, PLLC**

*/s/ Terry L. Wike*
PAUL S. PADDA, ESQ.
Nevada Bar No. 10417
TERRY L. WIKE, ESQ.
Nevada Bar No. 7211
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
*Attorneys for Plaintiff Jaslyn Cosey*

**PAUL PADDA LAW, PLLC**
6605 Las Vegas Blvd. South, Suite 203
Las Vegas, Nevada 89119
Tele: (702) 366-1888 • Fax (702) 366-1940